# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### ELKINS

**DEONNA M. MAUZY,**

       Plaintiff,

**v.**                                          **Civil Action No. 2:08-CV-75**
                                              **(MAXWELL)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF**
**SOCIAL SECURITY,**

       Defendant.

## <u>ORDER ACCEPTING IN PART AND REJECTING IN PART OPINION/REPORT AND RECOMMENDATION</u>

The above-styled social security appeal was instituted in this Court on July 2, 2008, with the filing of a Complaint by the plaintiff, Deonna M. Mauzy. In her Complaint, the plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of her denial of disability benefits under the Social Security Act by the defendant, the Commissioner of the Social Security Administration. The Answer of the defendant was filed on December 16, 2008.

On January 15, 2009, a Motion For Summary Judgment and Brief In Support thereof were filed on behalf of the plaintiff, and on February 11, 2009, a Motion For Summary Judgment and Memorandum In Support thereof were filed on behalf of the defendant. Additionally, on February 25, 2009, the plaintiff filed a Response To Defendant's Motion For Summary Judgment.

In her Motion For Summary Judgment, the plaintiff argues that either the Appeals Council or the Administrative Law Judge ("ALJ") erred in the handling of the psychological evidence from Thomas Stein, Ed.D; that the ALJ erred in failing to consider all of the plaintiff's severe impairments at step two of the five-step sequential evaluation process;

that the ALJ erred in failing to include all of the plaintiff's limitations in his residual functional capacity ("RFC") finding; and that the ALJ erred in improperly rejecting the opinion of the plaintiff's treating psychiatrist, Frederick S. Raines, MD.

In his Motion for Summary Judgment, the defendant asserts that the plaintiff's argument that an alleged inconsistency in weighing evidence from Dr. Stein required remand is without merit; that substantial evidence supports the ALJ's step two determination; that substantial evidence supports the ALJ's RFC finding; and that substantial evidence supports the ALJ's determination that Dr. Raines' opinion of disability was unsupported by his own treatment notes.

The case was referred to United States Magistrate Judge James E. Seibert in accordance with Rule 83.12 of the Local Rules of General Practice and Procedure. On June 12, 2009, Magistrate Judge Seibert entered a Report And Recommendation ("R&R") wherein he recommended that the plaintiff's Motion For Summary Judgment be denied and that the defendant's Motion For Summary Judgment be granted. Specifically, Magistrate Judge Seibert found that substantial evidence existed to support the ALJ's decision; that the ALJ's handling of the psychological evidence from Thomas Stein, Ed.D., was not a cause for remand; that the ALJ had considered all of the plaintiff's severe impairments; that the ALJ'S RFC finding did include all of the plaintiff's limitations; and that the ALJ did not improperly reject the opinion of the plaintiff's treating psychiatrist.

Magistrate Judge Seibert's R&R expressly directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of Court within ten days after being served with a copy of said R&R. Said R&R further advised the parties that a failure to timely file

objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

The plaintiff's Objections To The Report And Recommendation Of The Magistrate Judge were filed on June 22, 2009. In her Objections, the plaintiff argues that the Magistrate Judge misunderstood the correct issue and failed to understand that the Appeals Council's Order showed that the ALJ had relied on evidence that was irrelevant to the correct period at issue in the plaintiff's claim; that the Magistrate Judge incorrectly found that the ALJ's failure to consider all of the plaintiff's severe impairments at step two of the sequential evaluation process was harmless error; that the Magistrate Judge's R&R failed to address the correct issue with regard to the plaintiff's assertion that the ALJ's RFC finding did not contain all of her mental limitations; and that the Magistrate Judge failed to address any of the plaintiff's specific arguments with regard to the ALJ's improper rejection of her treating psychiatrist's opinion. The defendant's Opposition To Plaintiff's Objections To The Report And Recommendation Of The Magistrate Judge was filed on June 25, 2009.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the Magistrate Judge's findings to which objection is made. The Court is not, however, required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the findings or recommendation to which no objections are made. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985).

After reviewing Magistrate Judge Seibert's R&R; the plaintiff's Objections thereto; the defendant's Opposition To Plaintiff's Objections; and the entire record in this matter,

this Court finds, for the reasons fully addressed below, that it is appropriate to reject said R&R, in part, and to remand this matter back to the Commissioner for a new hearing.

## I.   ALJ's Failure To Consider All Of The Plaintiff's Severe Impairments At Step Two

The plaintiff argues that it was error at step two of the sequential evaluation process for the ALJ to find that she had only one severe impairment - bipolar disorder - and, based on that finding, to fail to consider all of her mental conditions, which were enumerated by her treating psychiatrist, Frederick S. Raines, M.D., as follows:

> She has been diagnosed progressively as: Adjustment Disorder with Mixed Disturbance of Emotion and Conduct, Acute Stress Disorder, Post Traumatic Stress Disorder, Adult Survivor of Childhood Sexual Abuse, Major Depressive Disorder - Recurrent, R/O Bipolar Disorder NOS and Personality Disorder NOS (Paranoid Traits, Narcissistic Traits, Histrionic Traits, Borderline Traits.)

(Tr. 203).

Additionally, the plaintiff notes that Thomas Stein, Ed.D., who conducted a consultative psychological examination of her at the ALJ's request, diagnosed Post Traumatic Stress Disorder due to childhood sexual abuse and a Pain Disorder.  (Tr. 353). The plaintiff argues that the ALJ was required to address each of her diagnosed mental conditions and to explain why he did or did not find each of them to be "severe."

The defendant contends, to the contrary, that substantial evidence supports the ALJ's step two determination and that the plaintiff's argument is one of form over substance.  In this regard, the defendant argues that the ALJ did not render a step two decision; that the ALJ properly determined the plaintiff's RFC and found, at step four, that she was not disabled; that the ALJ's step four determination was not flawed merely because the ALJ failed to specifically list each sporadically diagnosed affective order at

4

step two; and that, while the ALJ cited to a diagnosis of "bipolar disorder" as representative of the plaintiff's various affective disorders, he was clearly aware of and fully considered each of her various affective disorders in formulating her RFC.

In his R&R, Magistrate Judge Seibert expressly finds that the ALJ's failure to discuss all of the plaintiff's diagnosed mental disorders at step two of the sequential evaluation process was harmless in light of the fact that the ALJ was cognizant of these disorders when formulating his RFC finding. Specifically, Magistrate Judge Seibert finds that the ALJ did, in fact, render a decision at step two of the sequential evaluation process. In this regard, Magistrate Seibert notes that the ALJ determined that the plaintiff had a severe impairment, namely bipolar disorder, and used this finding to guide him through the remaining steps of the sequential evaluation process. Magistrate Judge Seibert finds that any error made by the ALJ in summarily dismissing the plaintiff's various other diagnoses at step two, without making any finding as to why said diagnoses did, or did not, constitute severe impairments, was rectified by the ALJ when he discussed the plaintiff's activities of daily living and her social functioning when making his RFC finding. In this regard, Magistrate Judge Seibert notes that the ALJ acknowledged that the plaintiff was diagnosed with acute stress disorder; an adjustment disorder; obsessive compulsive traits; and PTSD, and that she complained about anxiety, depression, and anger. Additionally, Magistrate Judge Seibert notes that the ALJ listed the plaintiff's medications, including antidepressants; anti-anxiety medications; and mood stabilizers. Finally, Magistrate Judge Seibert points out that the ALJ discussed two letters written to the plaintiff's attorney by her treating physician, Dr. Raines, wherein Dr. Raines set forth her diagnoses. For all of these reasons, Magistrate Judge Seibert finds that the ALJ did not overlook or ignore all of the

plaintiff's mental impairments and that the ALJ did, in fact, recognize them in his opinion. In this regard, Magistrate Judge Seibert notes that the ALJ was under no duty to specifically list all of the plaintiff's mental impairments and to explain why they did not constitute severe impairments at step two of the sequential evaluation process.

In determining whether a claimant is disabled, the Administrative Law Judge follows a sequential five-step process outlined in 20 C.F.R. § 416.920(a)(4), which provides as follows:

> The five-step sequential evaluation process. The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and at step five when we evaluate your claim at these steps. These are the five steps we follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 416.960(b).)

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled (See paragraph (g) of this section and § 416.96(c).)

The issue of whether it is error at step two of the sequential evaluation process for an ALJ to find that a claimant has only one severe impairment when there is substantial evidence of other impairments in the record was expressly addressed by the United States Court of Appeals for the Tenth Circuit in the case of **Brescia v. Astrue**, 287 Fed.Appx. 626 (10th Cir. 2008). In the **Brescia** case, the ALJ concluded that the claimant suffered from the severe impairments of asthma/chronic obstructive pulmonary disease and a hearing loss. **Id.** at 628. While the ALJ acknowledged that the claimant suffered from "a disorder of the spine, diabetes mellitus, a personality disorder, vision problems, intermittent uticaria, obesity and sleep apnea," he found those impairments to be non-severe. **Id.** Additionally, the ALJ declined to consider at all "alleged depression, attention deficit hyperactivity disorder, Lyme disease, and thoracic outlet syndrome" since he found these impairments not to be clearly medically determinable. **Id.** at 629. The claimant in the **Brescia** case argued that it was reversible error for the ALJ not to accept sleep apnea, obesity, degenerative disk disease, and hand and arm pain and numbness as severe impairments.

In addressing this alleged error, the Tenth Circuit held as follows:

> "We can easily dispose of" an argument that the ALJ should have found additional impairments to be severe because "[t]he ALJ . . . made an explicit finding that [the claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard." **Oldham v. Astrue**, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923; *see also id.* §§ 404.1525(e), 416.945(e); **Maziarz v. Sec'y of Health & Human Servs.**, 837 F.2d 240, 244 (6th Cir. 1987).
>
> As in **Oldham**, Ms. Brescia's true quarrel is not with the step-two findings concerning which of her impairments are severe, but with the step-four and step-five findings concerning her RFC and her ability to do any work. *See* **Oldham**, 509 F.3d at 1256-57. Notwithstanding the ALJ's earlier statement that her thoracic outlet syndrome was "not further considered," Aplt.App. at 23, in determining her RFC, he considered those effects of Ms. Brescia's sleep apnea, obesity, degenerative disk disease, and hand and arm pain that were supported in the medical record, in conjunction with the impairments that he deemed severe. *See id.* at 24-26. We find no reversible error.

**Id.**

This Court finds the Tenth Circuit's rationale for its holding in **Brescia** persuasive. At step two of the sequential evaluation process in the matter now before the Court, the ALJ found that the plaintiff had only one severe impairment, namely bipolar disorder. (Tr. 24). Nevertheless, at step four of the evaluation process, the ALJ noted that the plaintiff "had mild restriction of activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence and pace; and there was no

episode of decompensation." (Tr. 25). Additionally, in making his RFC finding, the ALJ relayed the following testimony by the plaintiff:

> She hallucinates, and this makes her moods worse, or she may have memory loss. She stated that her concentration is very low; she has difficulty remembering things; and has low energy. She also reported period of intense anger and rage.

(Tr. 26).

Referencing a January 11, 2005, function report, the ALJ noted that the plaintiff "stated that her medications interfere with her memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Her attention span is very low. She stated that [she] has difficulty handling stress and changes in routine." (Tr. 26). The ALJ summarized Dr. Raines' treatment records for the period of April 11, 2003, to December 2004, as follows, in pertinent part:

> Stated that the claimant was initially seen for complaints of anxiety, depression and anger control issues with primary stressors being domestic discord, financial difficulties and a motor vehicle accident with back and neck pain sequelae. She has been treated with various anti-depressants, anti-anxiety, and mood stabilizing medications and with psychotherapy (Exhibit 6F). The initial diagnostic impression: Acute Stress Disorder; Adjustment Disorder with Mixed Disturbance of Emotions and Conduct; Histrionics and Obsessive Compulsive Traits.

(Tr. 26).

Finally, the ALJ referenced Dr. Stein's July 31, 2006, psychological consultative report as relaying the following with regard to the plaintiff's various mental conditions:

> Dr. Stein stated that the claimant was cooperative, polite, mostly appropriate in her affect, but somewhat labile and a little tearful at time. She appeared to have an anxious and depressed mood and mild paranoid and guilt delusions. She had adequate concentration, fair judgment, and intact memory.

9

> The claimant was diagnosed with bipolar affective disorder, type 2 (depressed); PTSD, chronic type (mild symptoms); and pain disorder associated with a general medical condition and psychological factors.

(Tr. 28).

Referencing Dr. Stein's July 31, 2006, medical source statement of the plaintiff's ability to do work-related activities (mental), the ALJ noted that Dr. Stein found as follows:

> The claimant has "slight" limitations in her ability to: understand and remember detailed instructions; and carry out detailed instructions. The definition of "slight" indicates there is some mild limitation in this area, but the individual can generally function well. These findings are supported by her mild impairment in the ability to attend and concentrate and mild memory disturbance for recent events. Based upon the psychological examination completed July 10, 2006, the claimant has no limitation in her ability to: interact with the public; interact with supervisor(s); interact with co-workers; respond to work pressures in a usual work setting; and respond to changes in routine work setting. This assessment indicates that the Claimant has mild limitations in her ability to do work-related activities.

(Tr. 28).

In summary, this Court believes that, in finding at step two of the sequential evaluation process that the plaintiff had one severe impairment, bipolar disorder, the ALJ in this matter complied with all he was required to do at step two of the sequential evaluation process. This Court finds that it was not reversible error for the ALJ not to designate any of the plaintiff's other mental conditions as severe or not severe in light of the fact that he did, during later steps of the sequential evaluation process, consider the combined effect of all of the plaintiff's impairments.

## II.  ALJ's Failure To Include All Of The Plaintiff's Mental Limitations When Assessing Her RFC

The plaintiff also argues that the ALJ erred in failing to include all of her mental limitations when assessing her RFC.  The plaintiff notes, first, that it is unclear why the ALJ chose to find that she had the ability to do "simple, repetitive work," a physical restriction, when her claim is based almost entirely on mental impairments. Second, the plaintiff argues that, in light of the ALJ's determination that she did have a severe mental impairment, namely, bipolar disorder, the ALJ was required, first, to identify her mental limitations or restrictions and, second, to assess her work-related abilities on a function-by-function basis.  Citing SSR 96-8p, the plaintiff notes that work-related mental activities include the ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. The plaintiff contends that by finding her RFC to be the ability to do simple, repetitive work, the ALJ did not actually identify any mental limitations on her ability to work but rather a category of jobs he believed that she could perform.  By stating that he had considered the plaintiff's mental limitations and found that she could do simple, repetitive work, the ALJ, according to the plaintiff, was really saying that, even though he believed that she had mental limitations, he was not going to include them in the RFC because he had already decided that these limitations did not prevent her from working.

In response to this objection by the plaintiff, the defendant argues that the ALJ adequately accounted for the plaintiff's mental functional limitations and that, accordingly, substantial evidence supports the ALJ's mental RFC finding.  In this regard, the defendant

enumerates a number of excerpts from the transcript which allegedly support the plaintiff's ability to perform simple, repetitive work and points out that several courts, including the Fourth Circuit Court of Appeals, have affirmed decisions wherein the mental functional limitation was for simple and/or repetitive work.

In his R&R, Magistrate Judge Seibert indicates that "[t]his Court cannot say that, in light of the evidence of record and the evidence outlined in the ALJ's decision, there was no substantial evidence supporting the ALJ's determination of Claimant's RFC. Therefore, he did not err when he found that she had the RFC to perform a full range of light work." (Doc. 20 at 43). The plaintiff argues that the Magistrate Judge fails to recognize the correct issue, namely, that, even though this is a mental impairment case, the ALJ failed to include any of the plaintiff's metal limitations in his RFC finding. The plaintiff contends that this constitutes an error of law rather than a matter of substantial evidence.

In his December 29, 2006, decision, the ALJ assessed the plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. The claimant can do simple, repetitive work.

(Tr. 25).

At the conclusion of his discussion of the plaintiff's RFC, the ALJ stated, "I have

considered the claimant's mental limitations and find she can do simple, repetitive work." (Tr. 29).

SSR 96-8p defines RFC as "what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." As noted by the Plaintiff, SSR 96-8p defines work-related mental limitations to include "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."

A careful review of SSR 96-8p reveals that it does contain an express prohibition against initially expressing the RFC at step four of the sequential evaluation process in terms of exertional categories:

> The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past

13

> relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

After carefully reviewing the entire record in this matter, this Court agrees with the plaintiff that the ALJ did not follow the directives of SSR 96-8p and provide specific work-related functions in his RFC. To the contrary, by expressing his initial RFC finding at step four in terms of the exertional category of "light work," the ALJ engaged in the exact conduct that is expressly prohibited by SSR 96-8p. While the ALJ does discuss the plaintiff's various mental impairments in the RFC section of his decision, at no time does he make a function-by-function assessment of her limitations or restrictions based on those mental impairments, as is clearly required by SSR 96-8p. The ALJ did not separately consider limits on the plaintiff's ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. Because the ALJ did no more than merely classify a specific exertional category, the Court agrees with the plaintiff that the ALJ committed an error of law that requires reversal and remand for reevaluation of the plaintiff's RFC in the required manner.

### III. Handling Of Psychological Evidence From Thomas Stein, Ed.D., By The ALJ And By The Appeals Council

The plaintiff contends that either the ALJ or the Appeals Council erred in the handling of the psychological evidence from Thomas Stein, Ed.D. In this regard, it must be noted that, following the June 6, 2006, hearing, the ALJ, on his own initiative, sent the plaintiff for a consultative psychological evaluation with Thomas Stein, Ed.D. (Tr. 22, 416-417, 349). In justification of doing so, the ALJ stated, "[i]t's not that we lack psychiatric

14

records, we lack somebody pulling this all together to try to explain to me what we have." (Tr. 416). Dr. Stein's consultative psychological evaluation of the plaintiff was conducted on July 10, 2006, and his report of the same was dated July 31, 2006 (Tr. 349). The ALJ accepted Dr. Stein's opinion, which was that the plaintiff had only mild limitations in her ability to do work-related activities, and quoted extensively from it in his decision. (Tr. 27-28).

Although Dr. Stein initially found that the plaintiff's mental conditions caused only mild limitations in her ability to do work-related activities, he recommended that she return to his office for psychological treatment, and the plaintiff began seeing Dr. Stein for treatment on August 15, 2006. (Doc. 16 at 7). As one of the plaintiff's treating sources, Dr. Stein also completed a Routine Abstract Form Mental that was considered as part of a subsequent application for Supplemental Security Income disability benefits filed by the plaintiff. (Tr. 7). Having treated the plaintiff from August 15, 2006, through May 8, 2007, Dr. Stein indicated on his May 11, 2007, Routine Abstract Form Mental that "[c]ombination of psychological & physical impairments are of such magnitude that this pt. is not able to perform any substantial gainful activity." (Doc. 16 at 6).

Given that Dr. Stein's May 11, 2007, opinion was wholly consistent with that of Frederick S. Raines, the plaintiff's long-time treating psychiatrist, whose opinion the ALJ had discounted in his unfavorable December 29, 2006, opinion, plaintiff's counsel submitted said May 11, 2007, opinion to the Appeals Council, along with three pages of treatment records, as part of the plaintiff's Request For Review. (Tr. 364). In response to the plaintiff's Request For Review, the Appeals Council wrote the following in its May 8, 2008, Notice Of Appeals Council Action:

15

> The new medical evidence submitted in connection with the request for review, consisting of a letter dated December 19, 2007 from Vinoo S. Thomas, MD, and records dated July 31, 2006 to May 8, 2007 from Thomas Stein, EDD, are not relevant to the period at issue, which ended December 31, 2004, the date you last met the disability insured status requirements of the Social Security Act.

(Tr. 7).

In her objection to either the ALJ's or the Appeals Council's mishandling of the psychological evidence from Dr. Stein, the plaintiff notes that the foregoing statement by the Appeals Council is incorrect, in that both the December 19, 2007, letter from Dr. Thomas and the July 31, 2006, records from Dr. Stein were not submitted to the Appeals Council as new medical evidence, but were both, instead, part of the original hearing record before the ALJ. In this regard, the plaintiff references the fact that ALJ's List of Exhibits lists both of these documents. (Tr. 4).

The crux of the plaintiff's argument with regard to what she alleges was the mishandling of psychological evidence from Dr. Stein is that either the Appeals Council or the ALJ were in error. The plaintiff contends that if the Appeals Council is correct in its determination that Dr. Stein's July 31, 2006, opinion was not relevant evidence relating to the time period considered by the ALJ, then it was error for the ALJ to request the July 10, 2006, examination and rely heavily on Dr. Stein's report from it. On the other hand, the plaintiff contends that if it was not error for the ALJ to request and rely on Dr. Stein's report from the July 10, 2006, evaluation, then it was error for the Appeals Council to refuse to consider Dr. Stein's updated May 11, 2007, opinion.

In opposition to the plaintiff's objection regarding the mishandling of psychological evidence from Dr. Stein, the defendant argues that, although the ALJ did include Dr. Stein's

findings from his July 2006, consultative examination in the decision, he did not give any weight to Dr. Stein's report.  In this regard, the defendant notes that the ALJ specifically cited to Exhibits 3F[1] and 4F[2], thus making it clear that, in arriving at the plaintiff's mental RFC, he was relying on the expert opinions of the non-examining psychologist's assessment relating to plaintiff's mental disorder.  In the alternative, the defendant argues that, even if the ALJ had credited Dr. Stein by virtue of reciting his July 2006, clinical findings in his decision, the other evidence of record supports the ALJ's RFC finding.

In addressing this objection by the plaintiff, Magistrate Judge Seibert frames the issue posed as whether it was error for the Appeals Council to refuse to consider the new evidence submitted to the Appeals Council by counsel for the plaintiff via a June 4, 2007, cover letter.  Magistrate Seibert takes the position that, because it chose not to make the December 19, 2007, letter from Dr. Thomas and the July 31, 2006, to May 8, 2007, records from Dr. Stein part of the record based on its determination that said documents were irrelevant to the period at issue, the Appeals Council, by necessity, did consider said evidence.  For that reason, Magistrate Seibert found that it was his duty to determine whether substantial evidence existed to support the ALJ's decision in spite of this new evidence.  Accordingly, Magistrate Seibert made the following finding in this regard:

> The Court does not believe the ALJ's action of consulting Dr. Stein and relying on the report in his opinion constitutes reversible error.  Unless, of course, substantial evidence did not otherwise support the ALJ's conclusion.  This question will

[1]According to the ALJ's List of Exhibits, Exhibit 3F is a "RFC - Residual functional Capacity Assessment - mental (completed by DDS physician) dated 03/24/05." (Tr. 3).

[2]The ALJ's List of Exhibits identifies Exhibit 4F as a "Psychiatric Review Technique Form (completed by DDS physician) dated 03/24/05."  (Tr. 3).

> be discussed below. For the reasons that follow, the Court
> concludes substantial evidence exists and so the ALJ should
> be affirmed.

(Doc. 20 at 39).

The Court agrees with the plaintiff that both the Magistrate Judge and the Appeals Council failed to realize that at least part of the "new" evidence referenced by the Appeals Council in its May 8, 2008, Notice Of Appeals Council Action, namely the December 19, 2007, letter from Dr. Thomas and the July 31, 2006, records of Dr. Stein, was not actually new, in that it was a part of the record considered by the ALJ in reaching his decision. In this regard, the Court references the List of Exhibits which includes as Exhibit No. 15F a "Consultative Examination dated 7/31/06 by Thomas Stein, Ed.D." and, as Exhibit No. 18F, "Medical Report dated from Vinoo S. Thomas, M.D. by attorney letter dated 11/10/06." (Tr. 4). Dr. Stein's May 11, 2007, Report (Doc. 16 at 3-6), which counsel for the plaintiff attempted to submit to the Appeals Council as new evidence under cover of a letter dated June 4, 2007, was, however, new evidence that the Appeals Council found not to be relevant to the period at issue, which ended December 31, 2004, the date the plaintiff last met the disability insured status requirements of the Social Security Act.

The Fourth Circuit has held that medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration. In this regard, the Fourth Circuit stated the following:

> Furthermore, this Court has held that medical evaluations
> made subsequent to the expiration of a claimant's insured
> status are not automatically barred from consideration and may
> be relevant to prove a previous disability. Cf. **Cox v. Heckler**,
> 770 F.2d 411 (4th Cir. 1985) (remand was proper to consider
> post-insured status evidence where record demonstrated that
> claimant had a progressively deteriorating lung conditions

> which may have reached a disabling degree by the time claimant's insured status expired); *Branham v. Heckler*, 775 F.2d 1271 (4th Cir. 1985) (fact that intelligence quotient test was not taken until 1982 did not preclude a finding of retardation and disability in 1979); **Moore v. Finch**, 418 F.2d 1224 (4th Cir. 1969) (error not to consider reports of medical evaluations subsequent to expiration of claimant's insured period of coverage as evidence of possible earlier and progressive degeneration.)

**Wooldridge v. Bowen**, 816 F.2d 157 at 160 (4th Cir. 1987).

Based on the Fourth Circuit's opinion in the **Wooldridge** case, this Court does not believe it was error for the ALJ to request that Dr. Stein conduct a consultative psychological evaluation following the June 6, 2006, hearing. During the hearing, while justifying the fact that he was contemplating requesting a consultative psychological evaluation of the plaintiff, the ALJ himself recognized that it was not that the record lacked evidence of mental impairments but that "we lack somebody pulling this all together to try to explain to me what we have." (Tr. 416).

Even though the Court does not believe it was error for the ALJ to request that Dr. Stein conduct a consultative psychological evaluation, it does, in fact, believe that it was error for the Appeals Council to fail to distinguish between the new evidence that the plaintiff was attempting to submit (namely Dr. Stein's May 11, 2007, Report) and evidence that was already part of the record (namely Exhibit No. 15F, Consultative Examination dated 7/31/06 by Thomas Stein, Ed.D., and Exhibit No. 18F, Medical Report from Vinoo S. Thomas, M.D.) Dr. Stein's May 11, 2007, Report was new evidence that should have been properly considered by the Appeals Council and, had it been so considered, may well have changed the Appeal Council's determination with regard to whether the ALJ's opinion

was supported by substantial evidence. Accordingly, the Court agrees with the plaintiff that Dr. Stein's May 11, 2007, report was mishandled by the Appeals Council and that reversal and remand of this matter is required for distinguishing between the actual new evidence sought to be submitted by the plaintiff and that evidence which was already part of the record and for the proper consideration and treatment of this new evidence.

**IV.    ALJ's Rejection Of The Opinion Of The Plaintiff's Treating Psychiatrist**

In her fourth objection to the Magistrate's R&R, the plaintiff argues that, even though the Magistrate Judge failed to address each of her three specific arguments in this regard, the ALJ erred in improperly rejecting the opinion of her treating physician, Frederick S. Raines, MD. According to the plaintiff, the ALJ's rejection of Dr. Raines' opinion was improper, in part, because the ALJ relied on the fact that a portion of Dr. Raines' opinion addressed issues reserved to the Commissioner; in part, because the ALJ relied on the erroneous fact that there was no evidence that she had been diagnosed with bipolar disorder prior to the date last insured; and because the ALJ found that Dr. Raines' opinion conflicted with his own records and other substantial evidence in the record suggesting that the plaintiff was not disabled but failed to identify exactly which records or substantial evidence he found to be conflicting.

In opposition to the plaintiff's fourth and final objection, the defendant asserts that the ALJ was correct in stating that a treating doctor's opinion never binds the Commissioner on the issue of whether a claimant is able to work and that the ALJ fully explained why he did not credit Dr. Raines' opinion of disability by reasonably concluding that Dr. Raines' treatment notes from the relevant period showed that her symptoms were not work-preclusive; by finding that the evidence was more consistent with the assessment by the

state agency psychologist, and by finding that any allegation of disability in the relevant period was undermined by plaintiff's activities of daily living.

In his R&R, the Magistrate Judge defines the issue posed by the plaintiff's fourth objection as whether substantial evidence existed to rebut Dr. Raines' opinion. With regard to the first prong of the plaintiff's argument, the Magistrate Judge agrees with the ALJ that a doctor's finding that a patient is "disabled" in the medical context does not always translate to a finding of disability in a social security case and agrees with the ALJ's determination that persuasive contradictory evidence existed to rebut Dr. Raines' opinion that the plaintiff was disabled. In this regard, the Magistrate Judge indicates that he agrees with the ALJ's finding that Dr. Raines' opinion conflicted with his own records and conflicted with other substantial evidence in the record that tended to support the ALJ's ultimate conclusions that the plaintiff was not disabled.

The ALJ's discussion of the opinion of Dr. Raines, who was the plaintiff's treating psychiatrist from April 11, 2003, through March 30, 2006 (Tr. 203-269; 290-313), was rather limited. In this regard, the ALJ summarized Dr. Raines' treatment records for the plaintiff as follows:

> Treatment records for the period of April 11, 2003, to December 2004 (date last insured), by Frederick S. Raines, M.D., of Potomac Highlands Guild, stated that the claimant was initially seen for complaints of anxiety, depression and anger control issues with primary stressors being domestic discord, financial difficulties and a motor vehicle accident with back and neck pain sequelae. She has been treated with various anti-depressants, anti-anxiety, and mood stabilizing medications and with psychotherapy (Exhibit 6F). The initial diagnostic impression: Acute Stress Disorder; Adjustment Disorder with Mixed Disturbance of Emotions and Conduct; Histrionics and Obsessive Compulsive Traits. She was assessed with a GAF (Global Assessment of Functioning) score of 50, which serious

> symptoms, according to the <u>Diagnostic and Statistical Manual of Mental Disorders</u> ("<u>DSM-IV</u>"), page 32. Mental status examinations were within normal limits. The claimant was calm and pleasant. There was no thought disorder. Her speech was normal. Her affect/mood was normal. She was non psychotic and not clinically depressed or manic. The claimant showed improvement with medications. The claimant was advised to stop cigarettes and caffeine. The last note of December 3, 2004, prior to the date last insured, indicated that the claimant was less angry and less depressed with medication changes. She was calm; affect/mood was neutral; speech was coherent; non psychotic; and not suicidal. Dr. Raines noted that the claimant "improved." Medications were listed as Elavil, Trilafon, Ativan, and Wellbutrin (Exhibit 6F).

(Tr. 26-27).

In addition to the foregoing summary of Dr. Raines' treatment records, the ALJ specifically addressed two letters written to the plaintiff's attorney by Dr. Raines. The ALJ summarized the first letter, dated July 11, 2005, as follows:

> In a letter to the claimant's attorney dated July 11, 2005, Frederick S. Raines, M.D., of Potomac Highlands Guild, stated that he has been treating the claimant since April 11, 2003 (Exhibit 6F). He last saw her on May 12, 2005. She was initially seen for complaints of anxiety, depression and anger control issues with primary stressors being domestic discord, financial difficulties and a motor vehicle accident with back and neck pain sequelae. She has been treated with various anti-depressants, anti-anxiety, and mood stabilizing medications and with psychotherapy without any significant prolonged improvement in functioning. In his opinion, the claimant is disabled by her mental/emotional difficulties and would make a poor candidate for any form of regular, gainful employment (Exhibit 6F). However, matters of disability are reserved to the Commissioner (SSR 96-5p).

(Tr. 27).

With regard to Dr. Raines' October 3, 2005, letter, the ALJ stated:

> In a letter to the claimant's attorney dated October 3, 2005, Dr. Raines states that the claimant was diagnosed with bipolar

> disorder on April 21, 2005. However, there is no evidence that
> the claimant diagnosed with a bipolar disorder prior to the date
> last insured. Dr. Raines stated the claimant's
> "emotional/mental disability" was present prior to December 31,
> 2004 (Exhibit 8F/63). I note, however, that the Commissioner
> is the ultimate determiner of disability (SSR 96-5p).

(Tr. 27).

Finally, the ALJ provided the following overall explanation for discrediting Dr. Raines'

opinion, "[a]s for the claimant's mental problems, I find that Dr. Raines' opinion is not

supported by his medical reports, which indicate mild to moderate symptoms, and seems

grossly disproportionate to the actual evaluation. Therefore, I accord it very little weight."

(Tr. 29).

### A.    ALJ's Rejection Of Dr. Raines' Opinion Because It Addressed Issues Reserved To The Commissioner

As recognized by the plaintiff, SSR 96-5p does expressly provide that the final

responsibility for deciding whether a claimant is disabled is reserved to the Commissioner.

SSR 96-5p is not, however, limited to the foregoing statement, and the entire pertinent part

provides as follows:

> Under 20 CFR 404.1527(e) and 416.927(e), some issues are
> not medical issues regarding the nature and severity of an
> individual's impairment(s) but are administrative findings that
> are dispositive of a case; i.e., that would direct the
> determination or decision of disability. The following are
> examples of such issues:
>
> 1.    Whether an individual's impairment(s) meets or
>       is equivalent in severity to the requirements of
>       any impairment(s) in the listings;
> 2.    What an individual's RFC is;
> 3.    Whether an individual's RFC prevents him
>       or her from doing past relevant work;
> 4.    How the vocational factors of age, education, and work
>       experience apply; and

> 5. Whether an individual is "disabled" under the Act.
>
> The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner.
>
> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.
>
> However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.
>
> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

While the ALJ's decision does appear to criticize Dr. Raines twice for stating his belief that the plaintiff is disabled as a result of her mental/emotional difficulties (Tr. 27), the Court does not believe that the ALJ went so far as to violate SSR 96-5p by rejecting Dr. Raines' opinion on the basis of speaking to an issue reserved to the Commissioner. It appears to the Court, to the contrary, that the ALJ chose to accord Dr. Raines' opinion "very little weight" because he found it was "not supported by his medical reports, which

indicate mild to moderate symptoms, and seems grossly disproportionate to the actual evaluation." (Tr. 29).

B.   **ALJ's Rejection Of Dr. Raines' Opinion Based On The ALJ's Finding That There Was No Evidence That The Plaintiff Had Been Diagnosed With Bipolar Disorder Prior To the Date Last Insured**

The plaintiff argues that it was disingenuous for the ALJ to criticize Dr. Raines' opinion for diagnosing the plaintiff with bipolar disorder when there was no evidence that the plaintiff had been diagnosed with bipolar disorder prior to the date last insured, in light of the fact that the ALJ himself found that bipolar disorder was a severe impairment prior to the plaintiff's date last insured. The plaintiff correctly notes that neither the defendant nor the Magistrate Judge addressed this argument.

The pertinent part of the ALJ's decision with regard to this argument by the plaintiff provides as follows:

> In a letter to the claimant's attorney dated October 3, 2005, Dr. Raines stated that the claimant was diagnosed with bipolar disorder on April 21, 2005. However, there is no evidence that the claimant diagnosed with a bipolar disorder prior to the date last insured. Dr. Raines stated that the claimant's "emotional/mental disability" was present prior to December 31, 2004 (Exhibit 8F/63). I note, however that the Commissioner is the ultimate determiner of disability (SSR 96-5p).

(Tr. 27).

The Court agrees with the plaintiff that it is not possible to reconcile the foregoing statement by the ALJ with the ALJ's own express finding that the plaintiff suffered from the severe impairment of bipolar disorder through the date last insured. (Tr. 24). The Court does not believe, however, that this is an error requiring remand, since it is clear to the Court that  the ALJ chose to accord Dr. Raines' opinion "very little weight" because he

found it was "not supported by his medical reports, which indicate mild to moderate symptoms, and seems grossly disproportionate to the actual evaluation." (Tr. 29).

## C. ALJ's Rejection Of Dr. Raines' Opinion Based On Finding That It Conflicted With His Own Records And With Other Substantial Evidence In The Record

The plaintiff's last argument with regard to the ALJ's rejection of Dr. Raines' opinion is that the ALJ could only reject the opinion of a treating physician based on a finding of persuasive contradictory evidence. The plaintiff further argues that, if the ALJ did, in fact, believe that such contradictory evidence existed, he was required to include a discussion of that evidence in his decision. The plaintiff argues that, by merely stating that Dr. Raines' opinion was not supported "by his medical reports," the ALJ left the Court to guess as to which of the 91 pages of medical reports from Dr. Raines' office he was referring. In this regard, the plaintiff asserts that the ALJ was not able to cite to a single record that did not support Dr. Raines' opinion.

In his Opposition To Plaintiff's Objections, the defendant, on the other hand, points to a number of excerpts from Dr. Raines' treatment records which he argues were cited to by the ALJ as not supporting Dr. Raines' opinions regarding disability. (Doc. 22 at 7-8). The Court believes it is noteworthy, however, that none of the excerpts identified by the defendant were specifically referenced by the ALJ in his Decision.

With regard to this issue, the Magistrate Judge simply finds that "not only did Dr. Raines' opinions conflict with his own records, they conflicted with other substantial evidence in the record that tends to support the ALJ's ultimate finding that Claimant is not disabled." (Doc. 20 at 44). At no point, however, does the Magistrate Judge point to which

of Dr. Raines' records are in conflict with his opinion or to what substantial evidence in the record is in conflict with Dr. Raines' opinion.

As noted by the plaintiff, 20 CFR § 404.1527(d)(2) and 20 CFR 416.927(d)(2) expressly provide that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96-2p elaborates on this requirement as follows:

> Paragraph (d)(2) of 20 CFR 404.1527 and 416.927 requires that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s). Therefore:
>
> When the determination or decision:
>
> - is not fully favorable, e.g., is a denial; or
> - is fully favorable based in part on a treating source's medical opinion, e.g., when the adjudicator adopts a treating source's opinion about the individual's remaining ability to function;
>
> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.
>
> When the determination or decision is fully favorable and would be even without consideration of a treating source's medical opinion, the notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion. This explanation may be brief.

The Fourth Circuit has long held that "[t]he opinion of a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence. *See, e.g.*, ***Mitchell v. Schweiker***, 699 F.2d 185 (4th Cir. 1983)." ***Evans v. Heckler***, 734 F.2d 1012, 1015 (4th Cir. 1984). Additionally, the Fourth Circuit has identified the list of factors that should be used in evaluating and weighing medical opinions as follows:

> Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005).

***Johnson v. Barnhart***, 434 F.3d 650, 654 (4th Cir. 2005).

As previously noted, in the matter now before the Court, the ALJ expressly stated that he accorded Dr. Raines' opinion "very little weight." (Tr. 29). After a careful review of the ALJ's Decision in this matter, the Court agrees with the plaintiff that the ALJ failed to fully explain why he accorded "very little weight" to Dr. Raines' opinion. The ALJ's stated reason for according "very little weight" to Dr. Raines' opinion was that "Dr Raines' opinion is not supported by his medical reports, which indicate mild to moderate symptoms, and seems grossly disproportionate to the actual evaluation." (Tr. 29). As the plaintiff argues, however, at no point did the ALJ identify which of Dr. Raines' medical reports he believed contradict his opinion.

SSR 96-2p, as previously noted, expressly provides that an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion,

supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." In the matter now before the Court, the ALJ's decision is simply not sufficiently specific to make clear to this Court why the ALJ gave the opinion of Dr. Raines, the plaintiff's treating physician, very little weight. Accordingly, this Court finds that the ALJ committed an error of law that requires reversal and remand for a sufficiently specific discussion of why the opinion of Dr. Raines was given very little weight.

For all of the foregoing reasons, it is

**ORDERED** that Magistrate Judge Seibert's June 12, 2009, R&R [Doc. 20] be, and is hereby, **ACCEPTED IN PART** and **REJECTED IN PART**. Accordingly, it is

**ORDERED** that:

1. The plaintiff's Motion For Summary Judgment [Doc. 13] is **GRANTED IN PART** and **DENIED IN PART**;

2. The defendant's Motion For Summary Judgment [Doc.17] is **GRANTED IN PART** and **DENIED IN PART**; and

3. The Commissioner's decision is **REVERSED**, and this action is **REMANDED** to the Commissioner of Social Security pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Court's decision. Specifically, the above-styled civil action is remanded with instructions that the Administrative Law Judge consider and include all of the plaintiff's mental limitations in

making his RFC; that the Appeals Council distinguish between the new evidence that the plaintiff was attempting to submit (namely Dr. Stein's May 11, 2007, Report) and evidence that was already part of the record (namely Exhibit No. 15F, Consultative Examination dated 7/31/06 by Thomas Stein, Ed.D., and Exhibit No. 18F, Medical Report from Vinoo S. Thomas, M.D.) and afford said new evidence proper consideration and treatment; and that the ALJ provide a sufficiently specific discussion of why he believes the opinion of Dr. Raines is entitled to very little weight.

In accordance with *Shalala v. Schaefer*, 509 U.S. 292 (1993), it is further

**ORDERED** that  the Clerk of Court shall enter **JUDGMENT** reversing the decision of the defendant and remanding the cause for a rehearing and shall thereafter **DISMISS** this action from the docket of the Court.

Counsel for the plaintiff is advised that an application for attorney's fees under the Equal Access to Justice Act ("EAJA"), if one is to be submitted, must be filed within 90 days from the date of the judgment order.

The Clerk of Court is directed to transmit copies of this Order and the Judgment Order to counsel of record.

**DATE:** March 30, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE